**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re:<br><br>UPTOWN 240 LLC,<br><br>Debtor. | Bankruptcy Case No. 23-10617 TBM<br>Chapter 11 |
| AARON J. CONRARDY,<br>as Creditor Trustee,<br><br>Plaintiff,<br><br>v.<br><br>ENDEAVOR ADVISORY GROUP, LLC,<br><br>Defendant. | Adv. Pro. No. 25-1078 TBM |

---

**ORDER DENYING MOTION TO DISMISS COMPLAINT**

---

### I.     Introduction.

Aaron J. Conrardy, in his capacity as Creditor Trustee for a Creditor Trust established by the Chapter 11 Plan of Uptown 240, LLC (the "Debtor"), initiated this Adversary Proceeding and brought claims to avoid, recover, and preserve certain transfers allegedly made by the Debtor to Endeavor Advisory Group, LLC ("Endeavor"). Endeavor responded by filing a Motion to Dismiss requesting dismissal of all the causes of action against it under Fed. R. Civ. P. 12(b)(6), as incorporated by Fed. R. Bankr. P. 7012, for failure to state a claim upon which relief can be granted. The Court determines that the Creditor Trustee has alleged sufficient facts to properly state all claims for relief. Thus, for the reasons set forth below, the Court denies Endeavor's Motion to Dismiss.

### II.     Jurisdiction and Venue.

This Court has jurisdiction to adjudicate the Motion to Dismiss presented in this Adversary Proceeding pursuant to 28 U.S.C. § 1334. The dismissal contest is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) (matters concerning administration of the estate), (b)(2)(B) (allowance or disallowance of claims against the estate), (b)(2)(F) (proceedings to determine, avoid, or recover preferences), (b)(2)(H) (proceedings to determine, avoid, or recover fraudulent conveyances), and (b)(2)(O) (other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### III.   Procedural Background.

**A.   The Debtor's Main Bankruptcy Case and Establishment of the Creditor Trust.**

On February 23, 2023 (the "Petition Date"), the Debtor filed for relief under Chapter 11 of the Bankruptcy Code,[1] thereby commencing the bankruptcy case captioned:  *In re Uptown 240 LLC*, Case No. 23-10617 (Bankr. D. Colo.) (the "Main Case").[2]  On September 18, 2024, the Debtor filed its "Plan of Liquidation Dated May 8, 2024" (Main Case Docket No. 473, the "Plan") in the Main Case.  Section 7.2 of the Plan provided for the creation of a Creditor Trust as follows:

> On the Effective Date of the Plan, the Creditor Trust shall be established for the primary purpose of: (1) receiving and pursuing claims and Causes of Action, and distributing the proceeds of such claims and Causes of Action; and (2) receiving funds from the Unsecured Creditor Carveout and using and distributing funds in accordance with this Plan and the Creditor Trust Agreement.  The specific terms of Creditor Trust shall be set forth in the Creditor Trust Agreement.  The Creditor Trust will be controlled and administered by the Creditor Trustee, which Trustee shall be selected by the Committee.

The Creditor Trust Agreement (Main Case Docket No. 438-1), in turn, provided for the appointment of a Creditor Trustee.

On October 15, 2024, the Court entered an "Order Confirming Plan" (Main Case Docket No. 491, the "Confirmation Order"), confirming the Plan pursuant to Section 1129.  A little over a week later, on October 24, 2024, the Debtor submitted a "Notice of Filing of Final Plan Supplement in Connection with Plan of Liquidation" (Main Case Docket No. 495, the "Plan Supplement").  In the Plan Supplement, the Debtor submitted a fully-executed copy of the Creditor Trust Agreement, wherein the Simon E. Rodriguez (the "Initial Creditor Trustee") agreed to serve as Creditor Trustee (Main Case Docket No. 495, Ex. A).  The Debtor also submitted a list of "Vesting Causes of Action" in which it identified those Causes of Action and Avoidance Actions which were, as of the Effective Date of the Plan, vested in the Creditor Trust.  Endeavor was listed as a "Transferee" on the Vesting Causes of Action List, with an "Amount Transferred" of "$390,000." (Main Case Docket No. 495, Ex. B).  On December 20, 2024, the Initial Creditor Trustee resigned.  Two weeks later, Aaron J. Conrardy (the "Creditor Trustee") was appointed to serve as successor Creditor Trustee of the Creditor Trust.  (Main Case Docket No. 518).

---

[1]    All references to the "Bankruptcy Code" are to the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*.  Unless otherwise indicated, all references to "Section" are to sections of the Bankruptcy Code.

[2]    The Court uses the convention "Main Case Docket No. ___" to refer to documents filed in the CM/ECF system in the Main Case.  The Court uses the convention "Docket No. ___" to refer to documents filed in the CM/ECF system in this Adversary Proceeding:  *Conrardy v. Endeavor Advisory Group, LLC (In re Uptown 240 LLC)*, Adv. Pro. No. 25-1078 TBM (Bankr. D. Colo.) (the "Adversary Proceeding").

**B.     The Adversary Proceeding.**

On February 21, 2025, the Creditor Trustee filed a "Complaint" (Docket No. 1), thereby commencing this Adversary Proceeding.  In the Complaint, the Creditor Trustee asserted two claims for relief.  In the First Claim for Relief, the Creditor Trustee asked to avoid $290,000 in pre-petition transfers (the "Transfers") from the Debtor to Endeavor asserting that the Debtor made such Transfers with actual intent to hinder, delay, or defraud the Debtor's creditors under Section 544(b) and Colo. Rev. Stat. § 38-8-105(1)(a).  In the Second Claim for Relief, the Creditor Trustee sought to avoid the same $290,000 in Transfers from the Debtor to Endeavor asserting that the Debtor made such transfers to Endeavor in exchange for less than reasonably equivalent value at a time when the Debtor was insolvent or that the Debtor became insolvent as a result of the transfers under Section 544(b) and Colo. Rev. Stat. § 38-8-105(1)(b).[3]  In both the First and Second Claims for Relief, the Creditor Trustee also requested that the Transfers be recovered and preserved for the benefit of the Creditor Trust and creditors under Sections 550 and 551.

Endeavor responded to the Complaint by filing "Defendant Endeavor Advisory Group, LLC Motion to Dismiss Trustee's Complaint Pursuant to Fed. R. Bankr. 7012 and Fed. R. Civ. P. 12(b)(6)" (Docket No. 19, the "Motion to Dismiss").  The Creditor Trustee filed a "Response to Motion to Dismiss Complaint Pursuant to Fed. R. Bankr. 7012 and Fed. R. Civ. P. 12(b)(6)" (Docket No. 20, the "Response"), disputing that the Complaint should be dismissed.  Thereafter, Endeavor filed "Defendant's Reply to Trustee's Opposition to Dismiss Complaint Pursuant to Fed. R. Bankr. 7012 and Fed. R. Civ. P. 12(b)(6)" (Docket No. 21, the "Reply").  The matter is now ripe for determination.

## IV.     Legal Framework.

**A.     Pleading Requirements of Fed. R. Civ. P. 8(a).**

To plead a cause of action adequately under Fed. R. Civ. P. 8(a) (as incorporated by Fed. R. Bankr. P. 7008), a plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Essentially, "the [complaint] need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks and citations omitted); *Smith v. U.S.*, 561 F.3d 1090, 1104 (10th Cir. 2009) (quoting *Erickson*).  "[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context[.]"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

**B.     Heightened Pleading Requirements of Fed. R. Civ. P. 9(b).**

A party asserting a claim for fraud is subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b) (as incorporated by Fed. R. Bankr. P. 7009).  *See Wagner v. Cunningham (In re Vaughan Co., Realtors)*, 481 B.R. 752, 757 (Bankr. D.N.M. 2012) (stating that party asserting

---

[3]     The Complaint includes several seemingly stray references to avoidance pursuant to Section 548.  (*See* Compl. ¶¶ 22, 24, 38, 42, and 60.)  However, the Court construes the Complaint as stating claims to avoid the Transfers only under Section 544(b) and Colo. Rev. Stat. § 38-8-105(1)(a) and (b), since (as the Creditor Trustee acknowledges in the Response) all of the alleged avoidable Transfers occurred outside of the two-year lookback period set forth in Section 548(a)(1).  Colo. Rev. Stat. § 38-8-105(1)(a) and (b) are the main components of the Colorado Uniform Fraudulent Transfer Act, which the Court refers to hereinafter by shorthand as the "CUFTA."

claim for fraud under Section 548 or applicable state law must plead fraud under the 9(b) heightened pleading standard); *Tronox, Inc. v. Anadarko Petro. Corp. (In re Tronox, Inc.)*, 429 B.R. 73, 89, 91 (Bankr. S.D.N.Y. 2010) (holding that allegations of fraud must be pled with particularity under Rule 9(b) and that such requirement protects "the defending party's reputation, discourage[s] meritless accusations, and provide[s] detailed notice of fraud claims to defending parties"); *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (stating that actual fraudulent transfer claims must meet the heightened pleading requirements of Rule 9(b) whether brought under the Bankruptcy Code or applicable New York fraudulent transfer law); *Angell v. Haveri (In re Caremerica, Inc.)*, 409 B.R. 346, 353 (Bankr. E.D.N.C. 2009) ("A claim alleging an actual fraudulent transfer under § 548 must satisfy the particularity requirement of Rule 9(b).") (citations omitted); *Reagor Auto Mall, Ltd. v. Firstcapital Bank of Tex., N.A. (In re Reagor-Dykes Motors, LP)*, 2020 WL 4939180, at *8 (Bankr. N.D. Tex. Aug. 24, 2020) (recognizing that majority of courts have applied Rule 9(b) to Section 548(a)(1)(A) claims and claims brought under state Uniform Fraudulent Transfer Act statutes).  Under Rule 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud . . . [though] [m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally."

As the Tenth Circuit has explained it:

> [C]laims comply with Rule 9(b) when they "provid[e] factual allegations regarding the who, what, when, where and how of the alleged claims." . . .  But, "in determining whether a plaintiff has satisfied Rule 9(b), courts may consider whether any pleading deficiencies resulted from the plaintiff's inability to obtain information in the defendant's exclusive control."  . . .  This reflects the principle that "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim."

*U.S. ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 745 (10th Cir. 2018) (internal citations omitted).

Further, in the bankruptcy context:

> Bankruptcy courts have routinely concluded that relaxing the particularity standard of Rule 9(b) is appropriate where the fraud claims are brought by a bankruptcy trustee . . . .  This is because of a "presumption that the Trustee, as a third party, is disadvantaged with respect to information regarding frauds committed against the debtor."

*Sher v. JPMorgan Chase Funding (In re TMST, Inc.)*, 610 B.R. 807, 824 (Bankr. D. Md. 2019) (citations omitted).  As such, "[t]he degree of particularity required should be determined in light of such circumstances as whether the plaintiff has had an opportunity to take discovery of those who may possess knowledge of the pertinent facts."  *Id.* (quoting *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987)).

In this case, the Rule 9(b) heightened pleading standard applies to the Creditor Trustee's First Claim for Relief, in which he seeks to avoid actual fraudulent transfers under Section 544(b) and COLO. REV. STAT. § 38-8-105(1)(a). However,  the heightened pleading standard of Rule 9(b)

4

does not apply to the Creditor Trustee's Second Claim for Relief which pleads constructive fraud under Section 544(b) and COLO. REV. STAT. § 38-8-105(1)(b). *See Hyosung (Am.), Inc. v. Hantle USA, Inc.*, 2011 WL 835781, at *6 (Bankr. N.D. Cal. 2011) (holding that Rule 9(b) standard does not apply to constructive fraud claims under UFTA because no inquiry into debtor's intent is required); *Caremerica*, 409 B.R. at 353 ("Rule 9(b) does not apply to claims for avoidance of constructively fraudulent transfers because such claims are not based on actual fraud but instead rely on the debtor's financial condition and the sufficiency of consideration provided by the transferee.") (citing *In re Derivium Capital*, LLC, 380 B.R. 429, 439 (Bankr. D.S.C. 2006), and *In re Verestar, Inc.*, 343 B.R. 444, 459 (Bankr. S.D.N.Y. 2006)).

## C.    Legal Standard for Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

When considering a motion to dismiss under Fed R. Civ. P. 12(b)(6) (as incorporated by Fed. R. Bankr. P. 7012), the Court accepts as true all well-pleaded factual allegations in the complaint and views them in the light most favorable to the Creditor Trustee. *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). Under the refined pleading standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). *See also Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (referring to clarified standard under *Twombly* and *Iqbal* as a "refined standard").

Under the "refined standard," a claim is considered "plausible" when the complaint contains facts which allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "Plausible" does not mean "probable", although the plaintiff must show that its entitlement to relief is more than speculative. *Twombly*, 550 U.S. at 555, 556-57. If the allegations in a complaint "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Kansas Penn*, 656 F.3d at 1215 (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) and *Twombly*, 550 U.S. at 570). Put another way, "the complaint must give the Court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

"The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn*, 656 F.3d at 1215; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Thus, the Tenth Circuit has held that "the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" *Khalik v. United Airlines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citing *Robbins*, 519 F.3d at 1247 (internal quotation marks and citations omitted in *Khalik*).

The Court is bound to accept only factual allegations as true and will not give deference to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). As a result, courts often begin their analysis by identifying allegations that are no more than

conclusions and, therefore, not entitled to the "assumption of truth." *Id.* at 679.  Legal conclusions must be supported by well-pleaded factual allegations, which can be assumed as true and evaluated as to whether they plausibly give rise to the requested relief. *Id.*  This process is a context-specific task which depends on the elements of a particular claim and requires the Court to draw upon its judicial experience and common sense. *Burnett*, 706 F.3d at 1236 (quoting *Iqbal*, 556 U.S. at 679).  Careful evaluation is necessary both to ensure that a defendant is sufficiently able to prepare his defense and to avoid "ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kansas Penn*, 656 F.3d at 1215 (internal quotation omitted).

Ultimately, the critical question is: "assum[ing] the truth of all well-pleaded facts . . . and draw[ing] all reasonable inferences therefrom in the light most favorable to the plaintiffs," whether the compliant "raise[s] a right to relief above the speculative level.'" *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).  It is a low threshold.  "[G]ranting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias*, 567 F.3d at 1178 (quoting *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001)).  Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

## V.    Summary of General Factual Allegations in the Complaint.

In the Complaint, the Creditor Trustee presented 11 paragraphs of general alleged facts (paragraphs 12-22) under the heading "General Allegations."  For purposes of this Order, the Court summarizes the key alleged facts, which must be accepted as true, as follows:

Before the Petition Date, the Debtor owned partially-developed real property in Colorado at 240 Lake Dillon, Dillon, CO 80435 (the "Property").  (Compl. ¶ 12.)  The Property was encumbered by a note and deed of trust held by JGJP Dillon, LLC (the "Lender") in the amount of $9,517,080.31 on the Petition Date.  (Compl. ¶ 13.)  The Lender had commenced a foreclosure action in Summit County, Colorado, Case No. 2023CV30002, before the Petition Date.  (Compl. ¶ 14.)  The Property was also encumbered by mechanics' liens before the Petition Date, including liens asserted by RMS Concrete, Inc., and ClayDean Electric Company.  (Compl. ¶ 15.)

Commencing in early 2019, the Debtor entered into purchase contracts to sell future condominium units with third parties, and accepted deposits from, among others, Harry Salzman, David and Zoe Holt, Paul and Jean Connolly, and Majid Molaie and/or the Majid Molaie Living Trust (the "Unit Purchase Creditors").  (Compl. ¶ 16.)  Each of the Unit Purchase Creditors filed claims in the Debtor's Main Case.  (Compl. ¶ 17.)  Before the Petition Date, the Debtor had been sued and threatened with by ClayDean Electric Co., in Case No. 2020CV30121 in Summit County District Court, Colorado, and by the Lender.  (Compl. ¶ 18.)

Within the four years before the Petition Date, the Debtor made certain transfers to or for the benefit of Endeavor as follows:

(a)    on August 30, 2019, the Debtor transferred $25,000.00;
(b)    on September 30, 2019, the Debtor transferred $25,000.00;

(c)     on January 13, 2020, the Debtor transferred $150,000.00;

(d)     on March 5, 2020 the Debtor transferred $50,000.00;

(e)     on June 18, 2020, the Debtor transferred $30,000.00; and

(f)     on July 20, 2020, the Debtor transferred $10,000.00

(Compl. ¶ 19.)  The Transfers total $290,000 and were made by wires from the Debtor's bank account at US Bank ending -1323.  (Compl. ¶ 20.)

In addition to the Transfers, the Debtor made additional payments to Endeavor before the four-year fraudulent conveyance lookback period, consisting of:

(a)     $50,000.00 on September 11, 2018;

(b)     $50,000.00 on December 24, 2018; and

(c)     (d) $50,000.00 on January 7, 2019.

(together the "Additional Transfers").  (Compl. ¶ 21.)

### VI.    Legal Analysis.

In the Motion to Dismiss, Endeavor requests that the Court dismiss both the First and Second Claims for Relief based on an alleged "failure to state a claim upon which relief can be granted" pursuant to Fed. R. Civ. P. 12(b)(6), as incorporated by Fed. R. Bankr. P. 7012. Endeavor also introduced its own additional factual allegations.

### A.    The Court Will Not Consider Materials Extraneous to the Complaint.

In the Motion to Dismiss, in the section labeled "Background," Endeavor makes numerous factual allegations, including allegations regarding the Debtor's two engagements of Endeavor. The Court determines that it should not consider any of the new facts interjected by Endeavor in the Motion to Dismiss.

Fed. R. Civ. P. 12(d) states the general rule:

> If on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all material that is pertinent to the motion.

The reason for the foregoing is fairly obvious.  Motions to dismiss under Fed. R. Civ. P. 12(b)(6) are designed merely to test to the sufficiency of the allegations presented by a plaintiff in a complaint.  To adjudicate a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court is supposed to accept the well-pleaded factual allegations in a complaint as true.  *Iqbal*, 556 U.S. at 679; *Burnett*, 706 F.3d at 1235.  And, then, the process requires to the Court to consider whether the plaintiff's allegations — accepted as true — are sufficient to "state a claim upon which relief can be granted."  A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is not a mechanism to dispute the facts or argue about the ultimate merits.  *Broker's Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's amended

complaint alone is legally sufficient to state a claim for which relief may be granted."). If a defendant wants to dispute the facts or argue the merits, then it must do so through a motion for summary judgment or trial.

However, there is a narrow exception to this general procedural sequence under Fed. R. Civ. P. 12(b)(6):

> [I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss . . .

> If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied. Moreover, conversion to summary judgment when a district court considers outside materials is to afford the plaintiff an opportunity to respond in kind. When a complaint refers to a document and the document is central to the plaintiff's claim, the plaintiff is obviously on notice of the document's contents, and this rationale for conversion to summary judgment dissipates.

*GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997) (citations omitted); *Burke v. Holdman*, 750 Fed. Appx. 616, 620 (10th Cir. Sept. 13, 2018) (unpublished). The exception does not apply in this case, because the Creditor Trustee did not reference any documents in the Complaint that are central to his claim, nor fail to attach such documents.

Because of the procedural impropriety of Endeavor's attempting to interject new alleged (and unsupported) facts and extraneous documents through the Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court is faced with a choice. The Court may either: (1) convert the Motion to Dismiss into a motion for summary judgment under Fed. R. Civ. P. 56, as incorporated by Fed. R. Bankr. P. 7056, and also provide the Creditor Trustee with the additional procedural protections governing summary judgment process; or (2) exclude from consideration the new alleged facts and extraneous documents. *See* Fed. R. Civ. P. 12(d) (providing for conversion of Fed. R. Civ. P. 12(b)(6) motion to dismiss into motion for summary judgment under Fed. R. Civ. P. 56); *Geras v. Int'l Bus. Machs. Corp.*, 638 F.3d 1311, 1314-15 (10th Cir. 2011) (trial court was not required to consider the extraneous materials submitted by plaintiff in connection with Fed. R. Civ. P. 12(b)(6) motion). The decision is discretionary with the trial court. *Id.*

In this case, the Court determines that all the alleged new facts alleged by Endeavor in the Motion to Dismiss should be excluded. After all, neither Endeavor nor the Creditor Trustee has asked that the Court convert the Motion to Dismiss into a motion for summary judgment under Fed. R. Civ. P. 56, and neither Endeavor not the Creditor Trustee have supported their statements of fact with documents, affidavits, or declarations that supports their alleged facts. *See* Fed. R. Civ. P. 56(c)(1). Conversion would unnecessarily complicate the proceedings at this early stage. So, the Court will rule on the Motion to Dismiss without considering the extraneous alleged new facts asserted by Endeavor. *Geras*, 638 F.3d at 1314-15; *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999) (trial court has discretion to decline to consider extraneous documents). Of course, the Court's discretionary decision to exclude the alleged new facts advanced by Endeavor at the

Motion to Dismiss stage is without prejudice to either party's right to offer evidence in support of such factual allegations at a later stage of this Adversary Proceeding.

**B.**      **The Court Denies Dismissal of the First Claim for Relief.**

**1.**      **Elements of Claim for Actual Fraudulent Transfer under the CUFTA.**

Section 38-8-105(1)(a) of the CUFTA provides as follows:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (a) With actual intent to hinder, delay, or defraud any creditor of the debtor . . . .

Claims brought under the CUFTA may be brought within four years "after the transfer was made . . . or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." Colo. Rev. Stat. § 38-8-110(1)(a). Thus, to state a claim for actual fraudulent transfer under Section 544(b) and the CUFTA, the Creditor Trustee must allege: (i) a transfer of an interest of the Debtor in property; (ii) made within four years before the Debtor filed for bankruptcy (or within one year after the transfer could reasonably have been discovered by the Creditor Trustee); (iii) done with "actual intent to hinder, delay, or defraud" a creditor.

"Actual intent" can be quite difficult to prove. *See Fifth Third Bank v. Morales*, 2017 WL 6492108, at *2 (D. Colo. 2017) ("'actual intent' under [CUFTA] is seldom susceptible to direct proof"); *Gould v. Weaver (In re Darter)*, 2024 WL 5152577, at *14 (Bankr. W.D. Okla. Dec. 16, 2024) (noting that "[a] debtor rarely admits he or she acted with fraudulent intent" and citing *Zubrod v. Kelsey (In re Kelsey)*, 270 B.R. 776, 782 (10th Cir. BAP 2001)). Therefore, in analyzing claims for actual fraudulent transfer, Section 105(2) of the CUFTA directs courts to consider certain "badges of fraud" which constitute circumstantial evidence of fraudulent intent. Section 105(2) of the CUFTA provides:

> In determining actual intent . . . consideration may be given, among other factors, to whether:
>
> (a) The transfer or obligation was to an insider;
>
> (b) The debtor retained possession or control of the property transferred after the transfer;
>
> (c) The transfer or obligation was disclosed or concealed;
>
> (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> (e) The transfer was of substantially all the debtor's assets;
>
> (f) The debtor absconded;

9

(g) The debtor removed or concealed assets;

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Colo. Rev. Stat. § 38-8-105(2).  *See also Fifth Third Bank*, 2017 WL 6492108, at *2-3 (listing factors in Section 105(2) of the CUFTA); *Silverstein v. Wolf*, 2025 WL 2418495, at *6 (D. Colo. Aug. 21, 2025) (listing factors under CUFTA and citing *Schempp v. Lucre Mgmt. Grp., LLC*, 18 P.3d 762, 764 (Colo. App. 2000)).

"While a single badge of fraud may only create suspicion of fraud, several badges of fraud considered together may infer intent to defraud."  *Schempp*, 18 P.3d at 764 (citation omitted).  *Cf. Taylor*, 133 F.3d at 1339 (noting, with respect to actual fraudulent transfer claims brought under Section 548, that "[w]hen one or more of these badges of fraud are present fraudulent intent may be inferred").  At the same time, it is "not required that every badge of fraud be present for a court to infer fraudulent intent, nor do the badges have to be given the same weight or consideration." *Williamson v. Auction Cred. Enters., LLC (In re Arrowhead Fin. ICT, LLC)*, 2025 WL 1297110, at *7 (Bankr. D. Kan. 2025) (citing *Gould v. Liebl-Weaver (In re Darter)*, 2024 WL 5152577, at *14 (Bankr. W.D. Okla. Dec. 16, 2024)).  Indeed, the "[t]raditional badges of fraud are not the only indicators of actual fraudulent intent."  *Darter*, 2024 WL 5152577, at *14 (citing *Manchester v. Sharpton (In re All Phase Roofing & Const., LLC)*, 2020 WL 374357, at *15 (Bankr. W.D. Okla. 2020)).  Instead, '[t]hey are intended to be guideposts – as opposed to ineluctable factors – in a court's analysis of the totality of the circumstances to determine whether a transfer was made with actual fraudulent intent.'"  *All Phase Roofing*, 2020 WL 374357, at *15 (Bankr. W.D. Okla. 2020)). *See also Arrowhead Fin.*, 2024 WL 5152577, at *14 (quoting *All Phase Roofing*), and *Darter*, 2024 WL 5152577, at *14 (same).

### *2.*   Endeavor's Argument in Support of Dismissal of the First Claim for Relief.

In the First Claim for Relief, the Creditor Trustee seeks to avoid the Transfers to Endeavor pursuant to Section 544(b) and Colo. Rev. Stat. § 38-8-105(1)(a) under the four-year lookback period on the ground that the Transfers were made with actual intent to hinder, delay, or defraud the Debtor's creditors.  In support of this contention, the Creditor Trustee identifies four badges of fraud:

including but not limited to: (a) before the Transfers were made, the Debtor had been sued or threatened with suit, including without limitation, the lawsuits alleged in this Complaint [the "First Badge of Fraud"]; (b) the Debtor did not receive reasonably equivalent value in

10

exchange for the Transfers [the "Second Badge of Fraud"]; (c) the Transfers occurred shortly after a substantial debt was incurred (the "Third Badge of Fraud']; and (d) the Debtor was insolvent at the time of Transfers, or became insolvent as a result of the Transfers [the "Fourth Badge of Fraud"].

(Compl. ¶ 31.)

Endeavor asserts that the Creditor Trustee fails to meet the heightened pleading standard of Fed. R. Civ. P. 9(b) (made applicable to these proceedings by Fed. R. Bankr. P. 7009), because, although the Creditor Trustee identifies four badges of fraud in support of his claim, the facts stated in support of the badges are not stated with particularity sufficient to support the "actual intent to hinder, delay, or defraud" element of the first claim for relief. Specifically, Endeavor argues:  (1) "[t]he Debtor was not sued before the Transfers were made"; (2) "[t]he Debtor has received reasonably equivalent value in exchange for the Transfers"; (3) "[t]he [Creditor] Trustee fails to assert that the Transfers occurred shortly after a substantial debt was incurred"; and (4) "[t]he [Creditor] Trustee fails to establish that the Debtor was insolvent at the time of the Transfers."  In other words, Endeavor contends that the Creditor Trustee's allegations are wrong.

### a.    The First Badge of Fraud.

The crux of Endeavor's argument in the Motion to Dismiss is that, based on the allegations in the Complaint, the Creditor Trustee either has not established, or will not be able to establish, the First Badge of Fraud.  Endeavor also contends that, even if the allegations are true, they "offer only weak support" for the Creditor Trustee's claims.  But the question for the Court at this juncture is not whether the Creditor Trustee has proved his claim, nor whether each of the allegations identified as support for the badges of fraud, if proved individually, can be viewed as supporting the Creditor Trustee's contention that the Debtor acted with fraudulent intent in making the Transfer.  Instead, the Court's duty is to determine whether the Creditor Trustee has pled "factual allegations regarding the who, what, when, where and how of the alleged claims" . . ., taking into consideration "whether any pleading deficiencies resulted from the [Creditor Trustee's] inability to obtain information in the defendant's exclusive control," *Polukoff*, 895 F.3d at 745, and whether he has given the Court reason to believe that he has a reasonable likelihood of mustering factual support for his claim. *Ridge at Red Hawk*, 493 F.3d at 1177.

In the Complaint, the Creditor Trustee alleges that before the Petition Date, the Debtor owned the Property, that the Property was encumbered by a note and deed of trust held by the Lender in the amount of $9,517,080, and that the Lender had commenced a foreclosure action with respect to the Property.  (Compl. ¶¶ 12-14.)  The Creditor Trustee also alleges that, before the Petition Date, RMS Concrete and ClayDean Electric Co. ("ClayDean") had asserted mechanics liens against the Property (Compl. ¶ 15).  Further, the Creditor Trustee asserts that ClayDean and the Lender had sued or threatened to sue the Debtor prior to the Petition Date (Compl. ¶ 18), and he alleges more specifically that: "before the Transfers were made, the Debtor had been sued or threatened with suit. . . ."  (Compl. ¶ 31.)  The Creditor Trustee then asserts that the Debtor made the Transfers he seeks to avoid to Endeavor between August 30, 2019, and July 20, 2020.  (Compl. ¶ 19.)  He also alleges, in the general allegations, that the "[b]efore the Petition Date, the Debtor had been sued or threatened with suit including without limitation, by ClayDean Electric Co., in Case No. 2020CV30121 in Summit County District Court,

Colorado"– an action filed in 2020, which is near enough to the time of the Transfers that the Court can infer that the suit *could have been* filed or, at least, threatened, prior to the Transfers.[4]  The Creditor Trustee later alleges more specifically that, "before the Transfers were made, the Debtor had been sued or threatened with suit. . ." (Compl. ¶¶ 18 and 31)  And the Creditor Trustee alleges that, before the Petition Date, RMS Concrete and ClayDean Electric Co. ("ClayDean") had asserted mechanics liens against the Property – again, around the time of the Transfers.[5]  (Compl. ¶ 15).  This set of facts, if proved, is the kind of circumstantial evidence that could well support a finding of actual fraudulent intent by the Debtor.

> **b.**     **The Second Badge of Fraud.**

With respect to the Second Badge of Fraud, the Creditor Trustee has pled that Endeavor received Additional Transfers totaling $150,000, as well as the Transfers, which total $290,000, and that the Debtor did not receive reasonably equivalent value for the Transfers.  (Compl. ¶¶ 19, 21, and 31).  Endeavor moves to dismiss on the ground that, in the Complaint, the Creditor Trustee allegedly does not provide specific factual assertions showing that the Debtor did not receive a reasonably equivalent value for the transfers and contests the allegation by pointing to facts outside of the Complaint which, it contends, show that the Debtor *did* receive reasonably equivalent value for the Transfers received.

The test used to determine reasonably equivalent value in the context of a fraudulent conveyance requires the court to determine the value of what was transferred and to compare it to what was received.  *Matter of Vitreous Steel Products Co.*, 911 F.2d 1223, 1234–35 (7th Cir.1990).  Such inquiry requires consideration of totality of the circumstances and could include evaluation of such factors as the purpose and scope of the Debtor's engagement of Endeavor, the number of hours worked by Endeavor, the industry standards applicable to the engagement, the amount of fees paid, opportunity costs, and others.  *See In re Tribune Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 174 (2d Cir. 2021) (discussing some factors which must be considered in evaluating reasonably equivalent value).  Because the inquiry is fact-intensive, the issue of reasonably equivalent value generally requires more than examination of a complaint alone and thus cannot be resolved at the motion to dismiss stage.  *See id.* (reversing order dismissing actual fraudulent conveyance claims upon finding district court should not have decided reasonably equivalent value issue on the pleadings and citing cases); *Madoff Inv. Sec. LLC v. Madoff et al (In re Madoff)*, 458 B.R. 87, 113 (Bankr. S.D.N.Y. 2011) "(the Court need not make a finding as to whether the Defendants' services constituted adequate value, as these issues often involve factual inquiries inappropriate for a motion to dismiss"); *In re Actrade Fin. Techs. Ltd.*, 337 B.R. 791, 804 (Bankr. S.D.N.Y. 2005) ("[T]he question of 'reasonably equivalent value' and 'fair equivalent' is fact intensive, and usually cannot be determined on the pleadings.").  *Cf. West v. Christensen (In re Christensen)*, 2014

---

[4]     Indeed, as the Creditor Trustee notes, Colo. Rev. Stat. § 38-22-109(3) requires a creditor to serve a debtor with a notice of intent to lien at least 10 days prior to recording a lien in Colorado.

[5]     The Creditor Trustee also asserts that the Lender threatened the Debtor with suit prior to the Petition date and commenced a foreclosure action against the Property (Compl. ¶¶ 14, 18, and 31.)  The 2023 case number for the foreclosure action suggests that it was not filed prior to the time of the Transfers, but rather well after the Transfers were made.  And, given the date of the case, the Court is left to wonder whether the Lender, prior to the time that the Transfers were made, had actually "threatened" to bring a foreclosure action.  However, at this juncture, the Court cannot foreclose the possibility that it was, as, in the Court's experience, mortgage lenders often work with mortgagees for some time even after threatening foreclosure.

WL 1873401, at *4 (Bankr. D. Utah May 8, 2014) (noting that the "determination of reasonably equivalent value is a fact-intensive inquiry" and denying summary judgment on actual fraudulent transfer claim on ground that issue required further presentation of facts). Though the Creditor Trustee's allegations regarding lack of equivalent value in exchange may be weak, Endeavor has not convinced this Court that no set of facts would prove the absence of reasonably equivalent value.

      **c.**    **The Third Badge of Fraud.**

With respect to the Third Badge of Fraud, the Creditor Trustee asserts in the Complaint that the Transfers occurred shortly after a substantial debt was incurred. (Compl. ¶ 31.) Endeavor attacks the sufficiency of the allegation, arguing that the Creditor Trustee's allegation does not identify the specific "substantial debt" incurred. (Mot. ¶ 19). But, as the Creditor Trustee notes in the Response, the Creditor Trustee *did* identify with specificity several substantial debts incurred prior to the Transfers, including the fact that, commencing in early 2019, the Debtor started taking money from the Unit Purchase Creditors – all of whom are creditors in the Debtor's bankruptcy case. (Response ¶ 17.) Thus, the Court finds that the facts pled in the Complaint could well support the contention that the Transfers occurred after substantial debt was incurred.

      **d.**    **The Fourth Badge of Fraud.**

The Fourth Badge of Fraud pertains to insolvency. In the Complaint, the Creditor Trustee asserts that the Debtor either was insolvent at the time of Transfers or became insolvent as a result of the Transfers. Endeavor attacks the sufficiency of this allegation as well, arguing that, under Section 548, the Creditor Trustee is required to plead facts that show that, at the time of each of the Transfers, the Debtor's debts were greater than all of its property at a fair market value, and that he has failed to do so. (Mot. ¶¶ 20- 23.)

In the Response, the Creditor Trustee disagrees, stating:

> Endeavor misplaces its analysis on straight "balance sheet" insolvency under 11 U.S.C. § 548, Motion, ¶¶ 20-21, and is simply wrong under CUFTA, in any event. First, none of the Transfers occurred within two years of the petition date, and the [Creditor] Trustee's claims are thus asserted under 11 U.S.C. § 544 and CUFTA. *See, e.g.,* Complaint, ¶¶ 19, 25-29, 43-46. Endeavor recognizes as much, Motion, ¶ 23, but focuses on § 548 nonetheless.

Section 103 of the CUFTA defines the term "insolvent":

> (1) A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation.
> (2) A debtor who is generally not paying his debts as they become due is presumed to be insolvent . . . .
>  . . .
>
> (4) Assets under this section do not include property that has been transferred, concealed, or removed with intent to hinder, delay, or

13

defraud creditors or that has been transferred in a manner making
the transfer voidable under this article.

Colo. Rev. Stat. § 38-8-103.  Section 102(2) of the CUFTA further explains the meaning of the term "assets," defining "assets" as "property of the debtor."  However, the statutory definition excludes "[p]roperty to the extent encumbered by a lien" and "[p]roperty to the extent that it is generally exempt immediately prior to the time of transfer under nonbankruptcy law."  Colo. Rev. Stat. § 38-8-102(2).  The Creditor Trustee may establish a presumption of insolvency by showing that the Debtor was "generally not paying [its] debts as they become due" at the time of each of the Transfers.  Colo. Rev. Stat. § 38-8-102(2).  *See Weinman v. Crowley (In re Blair)*, 588 B.R. 605, 623 (Bankr. Colo. 2018).[6]  Alternatively, he may prove the Debtor's insolvency by showing that the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation.

In the Complaint, the Creditor Trustee asserts that various creditors had filed mechanics' liens against the Property before the Petition Date, which, at the very least suggests that it is plausible that the Debtor, prior to the Petition Date and possibly at the time of the Transfers, was not paying its bills on time.  Though *Twombly* requires a certain degree of specificity, it is unclear how the Creditor Trustee, acting on behalf of the unsecured creditors, could provide greater specificity at this pre-discovery stage of the case.  He is, after all, not the Debtor.  Under the circumstances, and pursuant to the relaxed standard applicable to trustees the Court finds that what the Creditor Trustee has pled about insolvency is plausible.  *See TMST*, 610 B.R. at 824-25 (discussing relaxed standard).

More to the point, however, even if the Creditor Trustee has failed to plead specific facts that could allow the Court to determine that it is plausible that, at the time each of the alleged avoidable Transfers was made, the Debtor was insolvent or that he was rendered insolvent by the Transfers, that does not mean that the Court should dismiss the claim at this stage.  After all, the Debtor's alleged insolvency is only one of the badges of fraud that the

---

[6]      Endeavor cites various cases in its Motion, including *Xeta Corp. v. Canton Indus. Corp.*, 132 F.3d 44 (10th Cir. 1997), and *Janvey v. Dillon Gage, Inc. of Dallas*, 856 F.3d 377, 387 (5th Cir. 2017), which apply essentially the same standard under other states' Uniform Fraudulent Transfer Acts.  (Reply at 5-6.)  However, none of the cases supports the contention that the Creditor Trustee must "establish" insolvency at this stage of the case.  Instead, in *Xeta*, the Tenth Circuit Court of Appeals affirmed a district court's order in which it granted summary judgment on a constructive fraud claim after finding, based on the admissible evidence presented with the summary judgment motion, that the debtor had debts owing in excess of $1 million and that every debt listed was "past due and in arrears." 132 F.3d at 3 n.5.  The issue was not whether insolvency had been pled with the requisite specificity – but rather whether the plaintiff had proved, through admissible evidence, that the debtor was insolvent at the time the alleged fraudulent transfers were made.  *Xeta* is, therefore, inapposite to the issue at hand.  *Janvey*, too, does not support Endeavor's contention.  In *Janvey*, the plaintiff, a court-appointed receiver, attempted at a jury trial to prove that the transferor of alleged fraudulent transfers was insolvent when it made the transfers.  856 F.3d at 387-88.  At trial, the jury heard testimony that the transferor paid its bills every Friday, along with testimony evidence that the transferor was "historically late" in paying a creditor's bills.  *Id.*  It did not hear evidence about any specific bills that were due and that the creditor did not pay.  *Id.*  The Fifth Circuit Court of Appeals affirmed the jury's verdict on the fraudulent transfer claim, finding that "evidence merely showing a significant debt and occasional late payments does not establish insolvency as a matter of law" and, therefore, that the jury was not required to find that [the transferor] was insolvent at the time of the transfers."  *Id.* at 388.  Nowhere does the Fifth Circuit suggest that a plaintiff bringing a fraudulent transfer claim be required to identify specific unpaid bills in its complaint, and this Court does not agree that such level of particularity is required to meet the *Twombly/Iqbal* standard.

Creditor Trustee has identified in support of his allegation that the Debtor made the Transfers with intent to hinder, delay, or defraud its creditors.  *See Darter*, 2025 WL 1297110, at *7 (holding that It is "not required that every badge of fraud be present for a court to infer fraudulent intent, nor do the badges have to be given the same weight or consideration") and *Taylor*, 133 F.3d at 1339 ("When one or more of these badges of fraud are present fraudulent intent may be inferred.")  And, as the Court has found, the Creditor Trustee has pled sufficient evidence in support of other badges of fraud.

The Creditor Trustee's allegations offer enough information to inform Endeavor about the particular circumstantial evidence the Creditor Trustee intends to offer in support of the contention that the Debtor acted with "intent to hinder, delay, or defraud" its creditors when it made the Transfers to Endeavor, and suffices to convince the Court that the Creditor Trustee may be able, through discovery, to muster factual support for his claims.  *See Ridge at Red Hawk*, 493 F.3d at 1177.  Because the Court finds that the Creditor Trustee has pled sufficient facts to identify the "who, what, when, where and how of the alleged claims," the Court denies the request to dismiss the First Claim for Relief. [7]

**C.     The Court Denies Dismissal of the Second Claim for Relief.**

**1.     Elements of Claim for Constructive Fraudulent Transfer under the CUFTA.**

Colo. Rev. Stat. § 38-8-105(1)(b) provides that a debtor's transfer of funds is constructive fraudulent if it was made:

> without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:  (I) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (II) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Colo. Rev. Stat. § 38-8-105(1)(b).  *See also Touchstone Group, LLC v. Rink*, 913 F. Supp. 2d 1064, 1083 (D. Colo. 2012) (quoting statute).  Actions to avoid the transfers must be brought within four years "after the transfer was made."  Colo. Rev. Stat. § 38-8-110(1)(b).

Claims for constructive fraudulent transfer under CUFTA Section 105(1)(b) differ from claims for actual fraudulent transfer in that, rather than having to allege actual intent to "hinder, delay, or defraud" a creditor, a party asserting a claim for constructive fraudulent transfer need only allege that the debtor received less than a reasonably equivalent value in exchange for the transfer.  *See Drywave Techs USA v. Message Int'l, Ltd.*, 2018 WL 1522608, at *5-6 (D. Colo. Mar. 28, 2018) (discussing pleading of such claims in the alternative).  Further, as discussed earlier, Rule 9(b)'s particularity requirements do not apply to constructive fraudulent transfer claims.  *See Hyosung*, 2011 WL 835781, at *6 (holding that Rule 9(b) standard does not apply to constructive

---

[7]     For now, the Creditor Trustee's obligation under Rule 9(b) is only to plead his claim with "enough specificity to put defendants on notice as to the nature of the claim."  *Polukoff*, 895 F.3d at 745.  Ultimately, however, the Creditor Trustee will have to provide sufficient evidence in support of all elements of his claim in order to prevail at trial.

fraud claims under UFTA because no inquiry into debtor's intent is required); *Haveri*, 409 B.R. at 353 ("Rule 9(b) does not apply to claims for avoidance of constructively fraudulent transfers because such claims are not based on actual fraud but instead rely on the debtor's financial condition and the sufficiency of consideration provided by the transferee.") (citing *In re Derivium Capital*, LLC, 380 B.R. 429, 439 (Bankr. D.S.C. 2006) and *In re Verestar, Inc.*, 343 B.R. 444, 459 (Bankr. S.D.N.Y. 2006)).

**2.     Endeavor's Argument in Support of Dismissal of the Second Claim for Relief.**

In the Motion to Dismiss, Endeavor argues that the Creditor Trustee's claim for constructive fraudulent transfer should be dismissed for the same reasons that the claim for actual fraudulent transfer should be dismissed – namely, because the Creditor Trustee has not set forth adequate facts to support his assertions (a) that the Debtor made the Transfers without receiving reasonably equivalent value, and (b) that the Debtor was insolvent at the time of the Transfers or became insolvent as a result of the Transfers.

For the same reasons set forth in the Court's discussion of the First Claim for Relief (and the related badges of fraud), the Court disagrees with Endeavor's position and finds with respect to the Second Claim for Relief that the Creditor Trustee's Complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

**VII.   Conclusion and Orders.**

The Court finds that in pleading his claims for relief, the Creditor Trustee made specific allegations containing sufficient factual matter, which accepted as true, state claims to relief that are plausible on their face.  Accordingly, the Court

ORDERS that the Motion to Dismiss is DENIED.  The Court

FURTHER ORDERS that Endeavor shall file an answer to the Complaint by no later than **October 28, 2025**, in accordance with the applicable Federal Rules of Bankruptcy Procedure and Federal Rules of Civil Procedure.

DATED this 14th of October, 2025.

BY THE COURT:

Thomas B. McNamara,
United States Bankruptcy Judge